OPINION
Plaintiff-appellant Keith Arnett appeals from a judgment of the trial court affirming a decision of the Franklin Monroe Local Board of Education terminating his employment as a school bus driver. He argues that his termination is not supported by the evidence. He also contends that his due process rights were violated because he did not receive a proper pre-termination hearing, as required by Cleveland Bd. of Edn. v.Loudermill (1985), 470 U.S. 532, 84 L.Ed.2d 494, 105 S.Ct. 1487.
We conclude that the evidence in the record is sufficient to support the Board's decision to terminate Arnett's employment. However, we find that Arnett's due process rights were violated when Superintendent David Gray, while the Board was deliberating in executive session, alleged that Arnett had made a statement (which Arnett denies having made) that he had driven his school bus in a manner calculated to scare a student, without having notified Arnett of the allegation that he had made the statement. Accordingly, the judgment of the trial court is Reversed, and this matter is remanded to the Board of Education for further proceedings.
I, Plaintiff-appellant Keith Arnett was employed as a bus driver by defendant-appellee Franklin Monroe Local Board of Education ("Board"). On February 20, 2001, Arnett met with Principal Kent Shafer to discuss student and parent complaints about his driving. Shafer also told Arnett that he had personally observed Arnett pull out of the school parking lot too fast for the conditions, in front of oncoming traffic. Shafer testified that at this meeting he also questioned Arnett about an incident in which Arnett allegedly almost struck a student with his school bus in the school parking lot. Shafer testified that Arnett responded, "I wasn't going to run over them, I just wanted to scare them." A week later, Arnett met with Superintendent David Gray and Transportation Supervisor Rebecca Holman to discuss other complaints that Arnett had been speeding, failing to stop at stop signs, and pulling out in front of cars when leaving the high school parking lot. Arnett denied these allegations. Gray told him that any further complaints or concerns regarding his driving would result in another meeting and possible disciplinary action. About a week after this meeting, Gray received a letter from Lynelle Soares, a parent of one of the students who rode Arnett's bus. Soares complained that she observed Arnett driving at an excessive rate of speed and running a stop sign. Gray gave a copy of Soares's letter to Arnett on March 5, 2001. The letter was discussed at a meeting between Arnett and Gray on March 9, 2001. Arnett was then placed on administrative leave. On March 12, 2001, Gray again met with Arnett to discuss the Soares letter. Arnett denied that he had run a stop sign, providing an exculpatory version of the incident.
Following the March 12th meeting, Gray recommended to the Board that Arnett be terminated. One of the reasons communicated to the Board during executive session supporting Arnett's termination was Arnett's alleged comment that he was trying to scare a student by almost hitting the student with the bus. The Board voted unanimously to terminate Arnett's employment that day. He was notified the next day.
Arnett appealed to the common pleas court, pursuant to R.C. 3319.081. He claimed that his termination was not supported by reliable, probative, and substantial evidence. He also argued that he was denied due process of law because of insufficient pre-termination proceedings. The trial court affirmed, finding Arnett's termination to be proper under R.C. 3319.081 for the following reasons:
 "From the testimony presented, the Court finds that there were various violations of traffic laws, including speeding and stop sign violations. (While some violations occurred while operating a school bus, the Court finds that operation of any type vehicle may be considered since driving behavior and safety under all circumstances are relevant.) Additionally, there was testimony of questionable bus driving practices, including exiting the school parking lot without regard for other traffic and operation within the school parking lot in a manner that potentially threatened the safety of a student. These incidents were serious enough that parents complained about the behavior and questioned the safety of their children. . . . From the testimony presented, this Court finds that there is a preponderance of substantial, reliable and probative evidence to conclude that Keith Arnett's employment should be terminated with Franklin Monroe Local Board of Education. From the testimony presented, the Court's decision is based upon the same facts and circumstances as were apparently presented to the Board when it made its decision on March 12, 2001."
Concerning Arnett's due process argument, the trial court concluded:
 "At trial, [Arnett] argued that procedural due process rights were violated, including the right to know the specifics of any allegations and the right to the identity of witnesses against him. However, since this matter was tried de novo and since [Arnett] has been entitled to discovery pursuant to the Rules of Civil Procedure, this Court finds that these arguments are moot."
From the judgment of the trial court affirming his termination, Arnett appeals.
 II
Arnett's first assignment of error is as follows:
 "THE COMMON PLEAS COURT ERRED IN FINDING THAT APPELLEE'S DECISION TO TERMINATE APPELLANT WAS SUPPORTED BY A PREPONDERANCE OF RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE"
In this assignment of error, Arnett argues that the trial court's decision affirming the Board's termination is erroneous because no lawful grounds were shown for his termination, as required by R.C. 3319.081.
In Dudukovich v. Lorain Met. Housing Auth. (1979), 58 Ohio St.2d 202,389 N.E.2d 1113, 1117, the Ohio Supreme Court explained the role of trial courts in reviews of administrative decisions:
 "[T]he Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision. We caution, however, to add that this does not mean that the court may blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. The key term is `preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand."
An appellate court's review of a trial court's decision affirming an administrative decision is even more limited. Unless we can say, as a matter of law, that the decision of the trial court is not supported by a preponderance of reliable, probative, and substantial evidence, or otherwise illegal, the trial court's decision must be affirmed. Kisilv. Sandusky (1984), 12 Ohio St.3d 30, 465 N.E.2d 848, 852.
R.C. 3319.081 governs termination of non-teaching employees. The statute provides:
 "[An employee] may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance."
Based on our review of the evidence in this record, we cannot say that the trial court abused its discretion in finding that the Board's order terminating Arnett's employment is supported by reliable, probative, and substantial evidence. The record discloses that Arnett had been informed of his duties and responsibilities and alleged derelictions therein on at least two previous occasions. On February 20, Shafer spoke to Arnett about driving safety. One week later, Gray told Arnett that any additional complaints about his driving would result in another meeting and possibly disciplinary action. Less than a week after this conversation, Gray received a written letter from a parent describing another driving infraction by Arnett. These driving violations jeopardized the safety of students and constituted a neglect of duty. The statute allows termination under these circumstances. Accordingly, Arnett's first assignment of error is overruled.
 III
Arnett's second assignment of error is as follows:
 "THE COMMON PLEAS COURT ERRED IN FINDING THAT APPELLANT WAS AFFORDED HIS PRE-TERMINATION AND POST TERMINATION RIGHT TO DUE PROCESS"
Arnett argues that he did not receive due process of law prior to his termination. More specifically, he claims that the Board failed to comply with the pre-termination requirements set out in Cleveland Bd. ofEdn. v. Loudermill (1985), 470 U.S. 532, 84 L.Ed.2d 494, 105 S.Ct. 1487, because it failed to give him notice of the times and dates of the alleged traffic violations that led to his termination. He also argues that he had no opportunity to address the Board prior to its vote terminating his employment.
Arnett's employment situation is governed by R.C. 3319.081, which allows termination only for cause. Due process requires that prior to termination of a statutory employee that he be afforded some sort of "pre[-]termination opportunity to respond" to allegations justifying his termination. Loudermill, supra. "`Something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." Id. Requisite due process is afforded when, prior to termination, the employee has the "opportunity to present reasons, either in person or in writing, why proposed action should not be taken" after the person has received "oral or written notice of the charges against him, [and] an explanation of the employer's evidence." Id. The Ohio Supreme Court has interpreted Loudermill's pretermination requirement narrowly. State v. Pero (May 17, 1996), Montgomery App. No. 15741, citing Local 4501 Communications Workers of America v. Ohio StateUniversity (1990), 49 Ohio St.3d 1, 3, 550 N.E.2d 164, 166.
Arnett received notice of the alleged traffic infractions and that additional violations could result in disciplinary action on February 27, 2001. He then received a copy of the Soares' letter setting out in detail one of the alleged traffic violations on March 9, 2001. He met with Gray on March 12, 2001, and was given the opportunity to contest these alleged infractions with Gray and then with the Board. He also availed himself of the right to a judicial appeal before the common pleas court. He claims that these procedures, however, were inadequate because he was not specifically notified of the times of his alleged speeding and running of stop signs. Additionally, he claims that he did not have an opportunity to address the Board prior to its vote terminating his employment.
Loudermill, as interpreted by the Ohio Supreme Court, does not require notice of specific dates of the alleged traffic violations. But it does require that a state employee be given notice of all grounds for a potential termination so that he may tell his side of the story prior to being discharged.
We conclude that Arnett's due process rights were violated because he was not provided notice of every potential ground for termination. Gray testified that he informed the Board of Arnett's alleged conversation with Shafer regarding a complaint that Arnett had almost struck a student with his bus. Gray informed the Board that Arnett told Shafer that he had not actually tried to hit the student, but was merely trying to scare him. Gray conceded on cross-examination that Arnett was never told that this alleged conversation would be used to evaluate whether he should be terminated. Although Gray attempted to downplay the significance of this statement in the Board's decision, we conclude that it was likely to have been a significant factor. Arnett had offered explanations and defenses for the other allegations, and his explanations and defenses were at least plausible. With respect to the Soares complaint, for example, Arnett had explained that he had stopped at the stop sign, at a point in Soares's travel where she did not actually have the bus under observation, but had to edge the bus forward, past the stop sign, to determine whether there was cross traffic. Even if Arnett's explanation and defenses, assuming Gray communicated them to the Board, would not have sufficed to relieve Arnett of all sanctions, they might have led the Board to impose a sanction less than termination. We can readily imagine that the Board, upon being advised that Arnett had admitted trying to drive his bus in a manner calculated to scare a student, would consider that a sufficient, independent reason justifying, if not requiring, the termination of his employment as a bus driver. Under Loudermill, Arnett should have been made aware that this alleged admission would be submitted to the Board for its consideration. Since Arnett was not made aware of his alleged admission until the hearing in the common pleas court, he had no opportunity to offer the Board his denial that he made the statement, or his explanation of it in context. This violated his right to pre-termination notice of the grounds for his termination.
Arnett's second assignment of error is sustained.
 IV
Arnett's first assignment of error having been overruled, and his second assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded to the trial court with instructions to remand the matter to the Board of Education, pursuant to R.C. 2506.04, for its further consideration.
WOLFF, P.J., and YOUNG, J., concur.